**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM E. SOPHER,           )
                                       )
                Plaintiff,        )        Civil Action No. 10-184 Erie
                                       )
      v.                       )
                                       )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security,    )
                                       )
               Defendant.     )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District Judge.

## I. INTRODUCTION

William E. Sopher ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI" under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and § 1381 *et seq.* Plaintiff filed his applications on January 4, 2008, alleging disability since July 6, 2007 due to a herniated disc (AR 69-82; 120).[1] His applications were denied, and he requested an administrative hearing before an administrative law judge ("ALJ") (AR 52-53; 64). Following a hearing held on August 6, 2009 (AR 22-43), the ALJ concluded, in a written decision dated September 17, 2009, that Plaintiff was not entitled to a period of disability, DIB or SSI under the Act (AR 11-21). Plaintiff's request for review by the Appeals Council was denied (AR 1-5), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the

---

[1] References to the administrative record [ECF No. 4], will be designated by the citation "(AR ___)".

Commissioner's motion will be denied and Plaintiff's motion will be granted to the extent he seeks a remand for further consideration.

## II.   **BACKGROUND**

Plaintiff was 48 years old on the date of the ALJ's decision and completed school through the eleventh grade (AR 12520).  He has past relevant work experience as a blow mold technician and laborer (AR 110; 121).

### A.   *Medical evidence submitted to the ALJ*

Plaintiff presented to the emergency room on July 9, 2007 and complained of back pain that radiated to his left thigh and knee (AR 155).  He reported an acute onset date of three days prior while walking in a swimming pool (AR 155; 185).  Physical examination by Lawrence Newhook, M.D., revealed that Plaintiff was alert but mildly distressed, with vertebral point tenderness and soft tissue tenderness over the lower lumbar spine, and a mildly limited range of motion in his back secondary to pain (AR 155).  Dr. Newhook found no evidence of muscle spasms in his back, but his straight leg raising test was positive at fifteen degrees on the left (AR 155-156).  No motor or sensory deficits were found (AR 156).  Lumbosacral spine x-rays showed some mild degenerative changes and lumbarization of S1 (AR 157).  Plaintiff was assessed with acute lumbar strain, acute left-sided sciatica and acute pain (AR 156).  He was scheduled for an MRI, prescribed Vicodin and Flexeril and was advised to avoid strenuous activity for three days (AR 156).

Plaintiff's lumbar MRI dated July 17, 2007 showed a disc herniation at the L4-5 level with mild central canal stenosis (AR 170).  Plaintiff was referred to physical therapy beginning in September 2007, and at his October 1, 2007 session, Plaintiff reported that his back pain had improved (AR 167-168).

Plaintiff was seen by Curtis Helgert, D.O., his primary care physician on October 4, 2007 and complained of back and right leg pain, but reported that physical therapy had been helpful (AR 175).  Injection therapy was discussed, but Plaintiff decided he wanted to "hold off" and continue with an exercise program instead (AR 175).  On physical examination, Dr. Helgert reported that his straight leg raising test was negative bilaterally but his low back remained "a

little tender" (AR 175). He was diagnosed with a herniated L4-5 disc, was to continue off work for two more weeks, and continue with a home exercise program (AR 175). On October 22, 2007, Plaintiff reported having good days and bad days with respect to his back pain (AR 175). Dr. Helgert found no significant tenderness on physical examination, and Plaintiff denied any radiating pain (AR 175). He was assessed with back pain with a herniated disc and released to return to work (AR 175).

On November 2, 2007, Plaintiff reported ongoing back pain (AR 175). He stated that he had returned to work and on some days did "quite poorly" (AR 175). Plaintiff indicated that he engaged in a "fair amount of lifting at work" (AR 175). Dr. Helgert noted some low back tenderness, but found no neurological symptoms (AR 175). He was diagnosed with lumbar strain and referred to physical therapy (AR 175).

When seen for physical therapy on November 15, 2007, Plaintiff reported that he still used pain medication to control his back pain (AR 165). On November 30, 2007 Plaintiff returned to Dr. Helgert and reported ongoing right leg pain (AR 174). He found that Plaintiff's legs were "fairly normal" neurologically, but that he had "a little bit of sensory alteration in the lateral aspect but nothing profound" (AR 174). Dr. Helgert further found low back tenderness and ordered a repeat MRI (AR 174). Plaintiff was to remain off work temporarily until January 7, 2008 (AR 174).

On December 3, 2007, Richard Cribbs, DPT, performed a physical work performance evaluation of Plaintiff (AR 160-164). He opined that Plaintiff was capable of performing medium level work for an eight-hour day/forty-hour week (AR 160). Plaintiff complained of pain in his low back during testing, and Mr. Cribbs noted that his statements were consistent with his movement patterns (AR 161). He noted that Plaintiff's gait was antalgic compared to his gait pattern upon arriving for the test (AR 164).

Frederic McDermott, M.D., compared an MRI of Plaintiff's lumbar spine dated December 7, 2007 to his previous study dated July 17, 2007 (AR 169). At the L3-4 level, Dr. McDermott found a minimal disc bulge that caused no significant impingement upon the thecal sac (AR 169). At the L4-5 level, he found a broad based central disc protrusion that had

3

decreased in size since the prior examination (AR 169). Dr. McDermott found normal alignment of the lumbar spine bones, no marrow signal abnormalities, and his paraspinal soft tissues were unremarkable (AR 169).

At Plaintiff's December 12, 2007 physical therapy session, the therapist noted that Plaintiff's condition had improved (AR 159). It was reported that he had decreased radiculopathy in the right lower extremity and tolerated increased range of motion exercises (AR 159).

When seen by Dr. Helgert on December 17, 2007, Plaintiff reported that he had completed physical therapy and was "doing better" (AR 174). Dr. Helgert noted that his most recent MRI showed shrinking of the disc and that Plaintiff still complained of some radicular leg pain, but it had improved (AR 174). On physical examination, Dr. Helgert found Plaintiff had normal sensation in his legs bilaterally, his deep tendon reflexes were normal and his strength was "ok" (AR 174). Some palpatory spasm and tenderness of his low back was noted (AR 174). Plaintiff was diagnosed with back pain and a herniated disc, and was directed to continue with his home exercise program (AR 174).

On January 4, 2008, Plaintiff reported that he had ongoing back pain and felt like he had regressed since completing physical therapy (AR 173). He complained of intermittent pain radiating down his legs (AR 173). Dr. Helgert observed that his last MRI "showed actual improvement in his herniated disc" (AR 173). He noted a little tenderness in Plaintiff's low back and referred him to physical therapy (AR 173).

Plaintiff continued to complain of back pain on February 1, 2008 and Dr. Helgert noted that he continued to have muscle spasm and tenderness in his paravertebral muscles in his lumbar spine, but his neurological examination seemed "ok" (AR 173). Dr. Helgert diagnosed him with chronic back pain and prescribed Skelaxin and Voltaren (AR 173).

On March 7, 2008, Justin Fridley, a state agency adjudicator, reviewed the medical evidence of record and found that Plaintiff had the medically determinable impairment of a herniated disc (AR 181). He opined that Plaintiff could perform light work, but could only occasionally climb ladders, ropes and scaffolds (AR 176-180). Mr. Fridley noted that Plaintiff

claimed limitations in standing, walking, lifting and carrying (AR 181). He found his statements only partially credible however, based on his medical history, character of his symptoms, his daily activities, and the type of treatment he received (AR 181).

Plaintiff returned to Dr. Helgert on June 9, 2008, and complained of back pain and radiating leg pain, which was exacerbated by activity (AR 172). Plaintiff stated that he had lost his job, and did not feel he was able to work due to his ongoing back discomfort (AR 172). Dr. Helgert found "a little" palpatory tenderness in his low back, but there were no neurological changes in his legs (AR 172). He was continued on his medications and was to remain off work until his orthopedic consultation (AR 172).

On August 7, 2008, Plaintiff reported to Dr. Helgert that he could engage in limited amounts of activity if he was "very careful" while lifting or bending (AR 172). He claimed he could only briefly sit before needing to get up and move about, and had to take breaks with any activity (AR 172). Dr. Helgert found spasm and tenderness of his paravertebral muscles, but no neurological changes in his legs (AR 172). He was assessed with low back pain (AR 172).

Dr. Helgert completed a medical source statement for Plaintiff's insurance company on August 7, 2008 (AR 183-184). He opined that Plaintiff was totally disabled from performing his previous occupation, but not from working at any other occupation (AR 183). He concluded that Plaintiff could work ten hours per week, and with breaks, stand for two hours, sit for two hours, drive for one hour and walk for two hours, and was limited to sedentary work (AR 183). Dr. Helgert noted that he expected Plaintiff's condition to improve (AR 184).

When seen by Dr. Helgert on September 8, 2008, Plaintiff reported that he continued to be limited in his activities (AR 172). He claimed he was able to lift a "fair amount" but had difficulty with anything repetitive (AR 172). He continued to have "good days and bad days" with leg pain that waxed and waned (AR 172). He was diagnosed with back pain and his medications were refilled (AR 172).

On November 17, 2008, Plaintiff was evaluated by James Macielak, M.D., pursuant to the request of Dr. Helgert (AR 185-186). Plaintiff complained of back pain that increased proportionally to the amount of activity he performed (AR 185). He further complained of

weakness in his right leg causing his leg to buckle, for which he used a cane (AR 185). Dr. Macielak noted Plaintiff's body mass index ("BMI") was 36.8, his gait was mildly antalgic, and he moved slowly from a sitting to a standing position (AR 185). On physical examination, he found Plaintiff had no significant structural spinal abnormalities, and his head compression rotation test and superficial palpation were negative (AR 185). Dr. Macielak found bilateral posterior superior iliac spine tenderness and bilateral sciatic notch tenderness (AR 185). Plaintiff's straight leg raising test produced popliteal and calf pain bilaterally, and popliteal compression was positive on the right, negative on the left (AR 185). Dr. Macielak found regional hypothesias in the right foot and no ankle reflex, but found no lower extremity manual motor deficits (AR 185). Plaintiff exhibited a symmetric range of motion in his hips, knees and ankles without irritability or instability (AR 186).

Dr. Macielak ordered x-rays, which showed a transitional segment, a sacralized L5 with a lumbosacral attachment on the left, open to the right, and evidence of retrolisthesis[2] at L4 and L5 (AR 186). He reviewed Plaintiff's previous MRI films noting his central disc herniation (AR 186). He diagnosed Plaintiff with herniated nucleus pulposis at L4-L5, degenerative disc disease at L4-L5 with retrolisthesis, transitional segment sacralized L5 and obesity (AR 186). Dr. Macielak recommended epidural injections, and, as another option, surgery, involving an instrumented fusion with discectomy decompression (AR 186).

Plaintiff returned to Dr. Helgert on December 8, 2008 and complained of back pain (AR 171). He informed Dr. Helgert he was considering undergoing epidural injections as suggested by Dr. Macielak (AR 171). Dr. Helgert found some sensory alteration in his right leg consistent with his dermatomal herniation (AR 171). He was diagnosed with a herniated disc, continued on his medications, and encouraged to pursue epidural injections (AR 171).

When seen by Dr. Helgert on March 9, 2009, Plaintiff reported chronic back pain with ongoing radicular pain in his legs (AR 171). He was assessed with chronic back pain and his

---

[2] Retrolisthesis is the backward slippage of one vertebra onto the vertebra immediately below. *See* http://medical-dictionary.thefreedictionary.com/retrolisthesis.

medications were refilled (AR 171). Dr. Helgert also prescribed Celexa since Plaintiff reported experiencing "some depressive [symptoms]" (AR 171).

On April 20, 2009, Plaintiff complained of back pain radiating down his legs and that he needed a cane to assist him in walking (AR 193). Dr. Helgert noted that Plaintiff did not want to undergo epidural injections as suggested by Dr. Macielak because he was "afraid of needles" (AR 193). Dr. Helgert informed him that epidural steroids would be a benefit, and encouraged Plaintiff to discuss this option (AR 193). Plaintiff was "amenable" to a discussion of his back pain and steroids with a pain clinic (AR 193). Plaintiff's physical examination remained unchanged, and he was diagnosed with chronic back pain (AR 193).

On May 26, 2009, Plaintiff began counseling with Ashley Howes, PC (AR 189-190). Plaintiff reported suffering from symptoms of depression for over one year (AR 189). He reported a lack of energy, sleep and appetite disturbances, a loss of interest in activities, anxiety, panic attacks and anger (AR 189-190). He denied suffering from any suicidal thoughts (AR 189). He was diagnosed with major depressive disorder, single episode, and adjustment disorder with mixed anxiety and a depressed mood (AR 190).

At his June 2, 2009 counseling session, Plaintiff reported that his disability was affecting his interpersonal relationships (AR 190). His therapist discussed coping skills for him to utilize in dealing with his feelings of depression and anger (AR 190).

On June 8, 2009, Dr. Helgert reported that Plaintiff was "doing pretty well" but still complained of back pain (AR 193). Plaintiff stated that he could not afford to visit a pain clinic (AR 193). He was assessed with chronic back pain and depression and his medications were refilled (AR 193). Dr. Helgert noted that Plaintiff "seemed to think [the Celexa] helped" with his symptoms (AR 193).

On June 10, 2009, Plaintiff reported to Ms. Howes that he was depressed due to the recent death of his uncle (AR 191). He further reported family situations that caused him distress (AR 191). He rated his depression at a three on a scale of one to five, but denied any thoughts of self harm (AR 191). Plaintiff reported that his medications and coping skills had helped with his symptoms and he had more energy (AR 191).

On July 1, 2009, Plaintiff reported suffering from a recent panic attack in a store (AR 196). He denied any thoughts of self harm (AR 196). On July 15, 2009, Plaintiff described a recent anger outburst, and rated his depression at a four (AR 196). Plaintiff had no suicidal ideations, and Ms. Howe reported that his affect was appropriate to his mood (AR 196). On July 29, 2009, Ms. Howe encouraged Plaintiff to utilize his coping skills in managing his feelings of depression and anger (AR 196-197).

When seen by Ms. Howe on August 12, 2009, Plaintiff rated his depression as a three and reported that his depression was "lessening a little" and that he used his coping skills to handle anger outbursts (AR 197). Plaintiff denied any feelings of harm to himself or others, and Ms. Howe reported that his affect was appropriate to his mood (AR 197).

B. *Medical evidence submitted to the Appeals Council*

On September 30, 2009, Plaintiff presented to the emergency room for complaints of back pain (AR 200). Physical examination revealed moderate muscle spasm of the right and left posterior back, moderate vertebral point tenderness over the mid and lower lumbar spine, and soft tissue tenderness in the mid and central lumbar area (AR 200). Plaintiff had a limited lumbar range of motion, and decreased flexion and extension (AR 200). Plaintiff exhibited a normal range of motion in his extremities, and no motor or sensory deficits were found (AR 200). It was reported that Plaintiff was fully oriented and his affect and mood were normal (AR 200). Plaintiff was diagnosed with acute pain in his lower back and a herniated disc, and prescribed Percocet and Flexeril (AR 200; 203).

An MRI of Plaintiff's lumbar spine dated October 9, 2009 showed minimal concentric disc bulge at the L3-4 level without any significant change for the prior exam dated December 7, 2007 (AR 204). At the L4-5 level there was a mild broad-based posterior disc herniation, with some facet hypertrophic changes and some minor right neural foramen encroachment (AR 204).

Treatment notes from Dr. Helgert dated November 23, 2009 show that Plaintiff continued to complain of back pain, and on physical examination his low back remained tender (AR 213). Dr. Helgert completed a Pennsylvania Department of Public Welfare Employability Assessment Form and opined that Plaintiff was permanently disabled due primarily to low back pain and

8

secondarily due to hypertension (AR 209). On this form, Dr. Helgert checked that his assessment was based upon physical examination, review of medical records, and appropriate tests and diagnostic procedures (AR 209).

On December 5, 2009, Dr. Macielak completed a Medical Source Statement opining that Plaintiff could engage in limited sedentary work activities, but was not capable of sustaining competitive work activity (AR 219-221). On the form, Dr. Macielak checked the section which stated that Plaintiff's low back pain symptoms were present to such an extent that it would distract him from adequate performance of daily activities or work, and that physical activity increased his pain to such an extent that medication and/or bed rest was necessary (AR 220-221).

On February 22, 2010, Plaintiff reported to Dr. Helgert that he slipped and fell and was having some neck pain radiating to his left arm (AR 213). Dr. Helgert noted that otherwise, Plaintiff was "doing ok" (AR 213). On physical examination, Dr. Helgert found some sensory alteration along the course of his ulnar nerve on his left hand, a diminished tricep reflex and his grip was "a little weak" (AR 213). He was diagnosed with cervical radiculopathy (AR 213). A cervical MRI dated February 26, 2010 revealed a C5-6 disc bulge with right sided predominant neural foraminal narrowing and a C6-7 disc bulge with left sided predominant neural foraminal narrowing (AR 214).

### C. Hearing testimony

Plaintiff and Ms. Edwards, a vocational expert, testified at the hearing held by the ALJ on August 6, 2009 (AR 22-43). Plaintiff testified that on a typical day, he watched television all day in a recliner, getting up and moving around every hour (AR 30). Plaintiff stated that he suffered from back spasms and stabbing pain on a daily basis (AR 36-37). He stated that his pain increased while lifting, sitting for too long, walking and standing (AR 32). He claimed that he changed positions and took Vicodin in order to alleviate the pain (AR 32-33). Plaintiff testified that he had no medical insurance and could not afford the recommended epidural injections (AR 33). He further testified that he had used a cane to walk since March 2008 because his right leg would give out on him causing him to lose his balance (AR 33). He stated he was able to sit for twenty to thirty minutes and stand for fifteen minutes (AR 35-36). Plaintiff testified that he

attempted to work despite his pain but his legs "ache[d] like crazy" and he was unable to perform his job (AR 35).

Plaintiff testified that he performed no household chores and did not attend social events and/or meetings (AR 30-31). He stated that his son performed the yard work and his wife helped him dress (AR 31). Plaintiff claimed that he stopped attending his son's school events because of an inability to sit or walk very far (AR 38). He stated that he had a baseball card collection that he viewed, but rarely left his house (AR 31-32).

Plaintiff further testified that he had difficulty being around other people, had trouble concentrating and had no motivation to complete tasks (AR 33-34). He claimed he angered easily (AR 39). He indicated that his medications helped alleviate his symptoms for a while but he had "gotten used" to them (AR 39). He claimed that his medications caused drowsiness (AR 34-35).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was limited to sedentary work with a sit/stand option not involving interaction with the general public (AR 41-42). The vocational expert testified that such an individual could work as a surveillance system monitor and a hand packer/worker (AR 42).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was not entitled to a period of disability or DIB within the meaning of the Act (AR 11-21). His request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 1-5). He subsequently filed this action.

### III.    STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3rd Cir. 1995). It has

been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3rd Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3rd Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV.    DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that her disability existed before the expiration of her insured status. 42 U.S.C. § 423(a), (c). The ALJ found that Plaintiff met the disability insured status requirements of the Act through December 31, 2011 (AR 11). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. Id. If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that Plaintiff had the following severe impairments: L4-5 disc herniation, obesity and anxiety/depression, but determined at step three that he did not meet a listing (AR 13-15). The ALJ found that he was able to perform work at the sedentary exertional level, except he would need to alternate between sitting and standing at will, and was precluded from working in positions requiring close interaction with the general public (AR 15). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 20). The ALJ also determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible (AR 16). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

I must first determine whether the evidence submitted to the Appeals Council, but not considered by the ALJ, dictates a remand. When a claimant seeks to rely on evidence that was not before the ALJ, the district may remand the case to the Commissioner if three requirements are met. *Matthews v. Apfel*, 239 F.3d 589, 593 (3rd Cir. 2001). First, the evidence must be "new," in the sense that it is not cumulative of pre-existing evidence on the record. *Szuback v. Sec. of Health and Human Servs.*, 745 F.2d 831, 833 (3rd Cir. 1984). Second, new evidence must also be "material," meaning that it is "relevant and probative" and there is a reasonable

possibility that the new evidence would have changed the outcome of the ALJ's decision. *Id.* Moreover, implicit in the materiality requirement is that the new evidence "relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.* Finally, "good cause" must be shown for not submitting the evidence at an earlier time. *Id.*

Plaintiff has failed to demonstrate a new evidence remand is warranted. While the records from Plaintiff's emergency room visit on September 30, 2009, his MRI dated October 9, 2009, the treatment notes from Dr. Helgert dated November 23, 2009 and February 22, 2010, and Dr. Macielak's opinion dated December 5, 2009 are "new" in the sense that they post-date the ALJ's decision, these records are immaterial since they do not relate to the time period for which benefits were denied. *See e.g., Harkins v. Astrue*, 2011 WL 778403 at *1 n.1 (W.D.Pa. 2011) (holding that a new evidence remand was not warranted where records dated one month after ALJ's decision did not expressly relate back to the relevant period); *Range v. Astrue*, 2009 WL 3448746 at *8 (W.D.Pa. 2009) (records that post-date the ALJ's decision are immaterial since they do not relate to the time period for which benefits were denied); *Anderson v. Comm'r of Soc. Sec.*, 2008 WL 619209 at *12 (D.N.J. 2008) (claimant not entitled to remand where records were dated after ALJ's decision); *Wilson v. Halter*, 2001 WL 410542 (E.D.Pa. 2001) (medical reports relating to period of time after that addressed in the hearing are immaterial to the ALJ's decision and therefore do not warrant remand), *aff'd*, 27 Fed. Appx. 136 (3rd Cir. 2002). In addition, the records relative to Plaintiff's back impairment are merely cumulative of the evidence that was before the ALJ. *See Szubak*, 745 F.2d at 833.

Having concluded that a new evidence remand is not warranted, I direct my attention to Plaintiff's arguments relative to the evidence that was before the ALJ.

Plaintiff first argues that the ALJ erred when assessing the severity of his physical and mental impairments at step two of the sequential evaluation process by failing to consider all of his diagnosed impairments, specifically, Dr. Macielak's diagnosis of degenerative disc disease at L4-5 with retrolisthesis, and Ms. Howe's diagnosis of major depressive disorder. At step two the ALJ determines whether the claimant has a medically severe impairment or combination of

impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3rd Cir. 2003). An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1521(b); 416.921(b). The inquiry into whether an impairment is severe "is a *de minimis* screening device to dispose of groundless claims." *Newell*, 347 F.3d at 546; *McCrea v. Comm'r of Soc. Sec.*, 30 F.3d 357, 360 (3rd Cir. 2004).

The ALJ concluded that Plaintiff had the severe impairments of L4-5 disc herniation, obesity and anxiety/depression, and proceeded with the sequential evaluation process wherein these diagnoses were considered. At step three, the ALJ evaluated Plaintiff's back impairment under 1.04, disorders of the spine, which includes degenerative disc disease, and considered Plaintiff's mental impairments under 12.04, affective disorders, which includes depressive syndromes. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.04; 12.04. Accordingly, the ALJ's failure to have mentioned these additional diagnoses at step two was harmless in this case. *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3rd Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some of [his] other impairments were non-severe, any error was harmless."); *see also Barnett v. Astrue*, 2008 WL 5114266 at *7 (W.D.Pa. 2008) (citing *Lee v. Astrue*, 2007 WL 1101281 at *3 n.5 (E.D.Pa. 2007)); *Kreuzberger v. Astrue*, 2008 WL 2370293 at *8 (W.D.Pa. 2008).

Plaintiff next argues that the ALJ erred at the third stage of the sequential evaluation process by offering no more than a conclusory finding with respect to whether his obesity, in combination with his other impairments, met and/or equaled the requirements of one of the listed impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, citing *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112 (3rd Cir. 2000). In *Burnett*, the ALJ's step three analysis consisted of the following discussion: "Although [Burnett] has established that she suffers from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart P of Social Security Regulations No. 4." *Id*. at 119 (alterations in original). The Third Circuit concluded that the ALJ's statement was so conclusory that it impeded judicial review. *Id*. at 119-20. As a result, it remanded the case for a

fuller explication of the reasoning supporting his determination. *Id.* Thereafter in *Jones v. Barnhart*, 364 F.3d 501 (3rd Cir. 2004), the Third Circuit stated that an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones*, 365 F.3d at 505. The Court found that the ALJ's step three analysis in *Jones* was sufficient under *Barnett* since the decision "as a whole" showed that the ALJ considered the appropriate factors in reaching the conclusion that the claimant did not meet the requirements for any listing. *Id.*

Although there is no specific obesity listing, Social Security Ruling ("*SSR*") 02-1p provides guidance for evaluating obesity-related claims. *See SSR* 02-1p, 2000 WL 628049. An individual with obesity may satisfy step three of the sequential analysis if obesity increases the severity of a coexisting impairment to the extent that the combination of impairments meets or equals the requirements of a listing. *Id.* at *5. An ALJ may not, however, make assumptions about the severity or functional effects of obesity combined with other impairments and must evaluate each case based on the information in the case record, since "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* at *6.

As previously stated, the ALJ specifically identified and considered Listing 1.04 with respect to Plaintiff's lumbar spine impairments, and Listings 12.04 and 12.06 relative to his mental impairments (AR 14-15). In considering each of these Listings, the ALJ reviewed the symptoms required in order to meet each Listing, and in conjunction with the medical evidence of record, concluded that Plaintiff's impairments did not satisfy a Listing (AR 14-15; 17-19). In making this determination, the ALJ acknowledged that Plaintiff's obesity could increase the severity of coexisting or related impairments, and specifically stated the cumulative effects of obesity had been considered (AR 15). He concluded, however, that even with such consideration, "the evidence fail[ed] to meet the requirements of any listed impairment" (AR 15).

Here, I find that the ALJ's explanation satisfies the requirements of *Burnett* and *Jones*. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3rd Cir. 2007 (step three analysis satisfied requirements of *Burnett* where the ALJ reviewed the medical evidence and explicitly stated the

Listing he was considering). Moreover, it is the Plaintiff who bears the burden of proving that his impairments meet or equal a listed impairment, *see Adorno v. Shalala*, 40 F.3d 43, 46 (3rd Cir. 1994), and Plaintiff has failed to point to any medical evidence indicating that his obesity had a significant impact on his functional ability rendering him presumptively disabled.

Plaintiff further challenges the ALJ's residual functional capacity ("RFC") assessment. "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett,* 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a); 416.945(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1546; 416.946. In making this determination, the ALJ must consider all evidence before him. *Burnett*, 220 F.3d at 121. Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p, 1996 WL 374183 at *5. The ALJ concluded that Plaintiff could perform work at the sedentary exertional level, except he would need to alternate between sitting and standing at will, and was precluded from working in positions requiring close interaction with the general public (AR 15). In making this determination, the ALJ stated:

> [T]he above residual functional capacity assessment is supported by the overall evidence of record. Albeit the undersigned does not doubt that the claimant experiences some discomfort due to his back impairment and objective testing in December 2007 showed positive findings on the MRI (Exhibit 2F), his treatment modalities have all been very conservative in nature. A Physical Work Performance Evaluation in December 2007 revealed that Mr. Sopher is capable of performing work within the medium range (Exhibit 2F). Moreover, there have been no more than mild findings on examination (Exhibit 6F).

(AR 18).  While Plaintiff advances several arguments in support of his contention that the ALJ's RFC determination is not supported by substantial evidence, I find his argument with respect to the ALJ's credibility determination dispositive in this case.

An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record.  20 C.R.F. §§ 404.1529(a); 416.929(a); *see also Hartranft*, 181 F.3d at 362.  In addition to the objective medical evidence, Social Security Ruling ("*SSR*") 96-7p and the regulations provide that the ALJ should consider other factors, such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record.  *See* 20 C.F.R. §§ 404.1529(c); 416.929(c); *SSR* 96-7p, 1996 WL 374186 at *2.  As the finder of fact, the ALJ can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record.  *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974).  The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court.  *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3rd Cir. 1983).

The ALJ found the Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, but concluded that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible (AR 16).  Plaintiff argues that in making this determination, the ALJ ignored his "exemplary work record."  *See Plaintiff's Brief* [ECF No. 7 p. 17].  A long and productive work history is an important factor in assessing credibility about pain and an inability to work.  *See Dobrowolsky v. Califano*, 606 F.2d 403, 409-10 (3rd Cir. 1979).  In *Dobrowolsky*, the claimant worked as a meat cutter, despite repeated hospitalizations for ischemia and coronary insufficiency.  He was also diagnosed with degenerative disc disease, lumbosacral strain, cervical strain, sciatic neuritis, and hypertension. *Id*. at 403-04.  Following his release from the hospital following an automobile accident, he attempted to work sporadically for another year.  He testified at the hearing that recurrent pain prevented him from performing even light work.  The Third Circuit stated:

[T]estimony of subjective pain and an inability to perform even light work is entitled to great weight, particularly when, as here, it is supported by competent medical evidence. Moreover, when the claimant has a work record like Dobrowolsky's twenty-nine years of continuous work, fifteen with the same employer, his testimony as to his capabilities is entitled to substantial credibility.

*Dobrowolsky*, 606 F.2d at 410; *see also Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3rd Cir. 1981) (per curiam) ("when the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility.").

In *Sementilli v. Astrue*, 2010 WL 521183 (W.D.Pa. 2010), this Court remanded the claimant's case to the ALJ for reconsideration of the claimant's credibility based on the ALJ's failure to have discussed the claimant's long work history in the context of his credibility determination. In so doing, we stated:

In *Gates v. Astrue*, 2008 U.S. Dist. LEXIS 64139 … (W.D.Pa. 2008), this Court remanded the claimant's case to the ALJ for reconsideration of the claimant's credibility due to the ALJ's failure to have considered the claimant's long and productive work history as a licensed practical nurse for 17 years and his attempts to work part-time after his injury, stating:

Gates previously worked for approximately 17 years as a licensed practical nurse, from 1985 until February 2002, when he ceased work due to his alleged impairments (AR 65-66; 96; 379; 429; 441). The Commissioner contends that the ALJ "clearly considered" this history because he "recognized" Gates' previous job as a licensed practical nurse and that he continued to work part-time during the period at issue. *Defendant's Brief* p. 14. The ALJ's decision however, contains only a statement that Gates previously worked as a licensed practical nurse, and this observation was made in connection with his vocational analysis and not his credibility assessment (AR 24). *See e.g., Reider v. Apfel*, 115 F.Supp.2d 496, 507 (M.D.Pa. 2000) (finding that ALJ failed to properly address claimant's work history and post-accident unsuccessful work attempts); *Sidberry v. Bowen*, 662 F.Supp.2d 1037, 1039-40 (E.D.Pa. 1986) (ALJ erred in ignoring claimant's work history and efforts to hold down a job)

*Gates*, 2008 U.S. Dist. LEXIS 64139 at *19-20 … .

In *Corley v. Barnhart*, 102 Fed. Appx. 752 (3rd Cir. 2004), in refusing to remand a case based upon an ALJ's failure to have commented on the claimant's long and productive work history, the court observed:

> Corley's second argument is that the ALJ erred by failing to factor into the assessment of his credibility the fact that he had a long and productive work history. In support of this argument, Corley relies on cases in which courts have viewed the testimony of claimants with long and productive work histories as highly credible. However, in each of these cases, *the claimant not only had a long and productive work history, but also showed evidence of severe impairments or attempted to return to work*, and neither of these circumstances exist here. *See e.g., D[o]browolsky v. Califano*, 606 F.2d 403 (3rd Cir. 1979). Therefore, the ALJ did not err by failing to afford Corley heightened credibility based solely on his work history.

> *Corley*, 102 Fed. Appx. at 755 (emphasis added).

*Sementilli,* 2010 WL 5211183 at *8.

Here, the objective medical evidence includes diagnostic studies demonstrating a herniated nucleus pulposis at the L4-5 level with mild central canal stenosis (AR 169-170; 186), and degenerative disc disease at the L4-5 level with retrolisthesis (AR 186). Plaintiff's work history reveals that he had twenty-three consecutive years of earnings since 1984, and had worked as a blow mold technician for the same employer since October 1994 (AR 83-84; 110; 121). The administrative record, as well as Plaintiff's testimony, reveals that he attempted to return to work after his back injury, working on and off until November 2007 (AR 35; 103; 106; 175). The ALJ's decision, however, does not address this evidence in the overall credibility analysis. Accordingly, the matter will be remanded for further consideration in order for the ALJ to reevaluate Plaintiff's credibility in light of his long work history and efforts to return to work. *See Weber v. Massanari*, 156 F. Supp. 2d 475, 486 (E.D.Pa. 2001) (case remanded for ALJ to reevaluate claimant's credibility in connection with long work history); *Reider v. Apfel*, 115 F. Supp. 2d 496, 507 (M.D.Pa. 2000) (finding remand appropriate where ALJ failed to properly address claimant's work history and post-accident unsuccessful work attempts); *Bond v. Astrue*, 2011 WL 710207 at *14 (W.D.Pa. 2011) (directing ALJ to consider on remand the plaintiff's

long work history in the context of his overall credibility determination); *Schilo v. Astrue*, 2010 WL 608018 at *9 (W.D.Pa. 2010) (finding ALJ's failure to have addressed, *inter alia*, claimant's long work history was error); *Dunsmore v. Astrue*, 2009 WL 1117299 at *7-8 (W.D.Pa. 2009) (remanding case for reevaluation of credibility in light of work history).

Given the Court's remand, it is unnecessary to reach the remaining challenges to the ALJ's RFC determination, since the ALJ will necessarily reconsider all of the evidence of record in his reevaluation of Plaintiff's credibility.

## V.    CONCLUSION

For the reasons discussed above, the Defendant's Motion will be denied and the Plaintiff's Motion will be granted to the extent he seeks a remand for further consideration. The matter will be remanded to the Commissioner for further proceedings.[3]  An appropriate Order follows.

---

[3] The ALJ is directed to reopen the record and allow the parties to be heard via submissions or otherwise as to the issue addressed in this Memorandum Opinion. *See Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 800-01 (3rd Cir. 2010).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM E. SOPHER,            )
                                   )
                    Plaintiff,        )        Civil Action No. 10-184 Erie
                                   )
      v.                       )
                                   )
MICHAEL J. ASTRUE,           )
Commissioner of Social Security,    )
                                   )
                    Defendant.     )

## ORDER

AND NOW, this 8th day of August, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [ECF No. 8] is DENIED, and Plaintiff's Motion for Summary Judgment [ECF. No. 6] is GRANTED to the extent he seeks a remand for further consideration by the Commissioner. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is directed to mark the case closed.

                                         s/ Sean J. McLaughlin
                                          United States District Judge

cm:    All parties of record